JEREMY CHIASSON, Judge Pro Tem.
The defendant, Donald Guidry, was charged by bill of information with one count of third offense driving while intoxicated, a violation of La. R.S. 14:98(D). Prior to entering his guilty plea, the defendant filed two motions to suppress and two motions to quash. The motions were denied, and the defendant pled guilty, pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to two years at hard labor, the first year without benefit of parole, probation or suspension of sentence, and was fined $500.00 plus court costs.
The defendant now appeals, designating two assignments of error.
The circumstances surrounding the defendant’s arrest were related in testimony from the arresting officer at the hearing on the defendant’s motions to suppress.

MOTIONS TO SUPPRESS

In assignment of error number 1, the defendant contends that the district court erred in failing to grant his motion to suppress any and all physical evidence and inculpatory statements and or confessions and his motion to suppress statement.[2]
The defendant’s brief to this court and defense counsel’s argument before the lower court at the hearing held on the instant motions indicate that the defendant’s actual challenge with the instant motions was to whether the arresting officer had probable cause to arrest the defendant for DWI. The trial court found probable cause for the defendant’s arrest and denied the motions.
A law enforcement officer has the right to stop and interrogate one reasonably suspected of criminal conduct. Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case, considering whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Arnold, 593 So.2d 1293, 1296 (La.App. 1st Cir.1991), writ denied, 594 So.2d 1305 (La.1992).
La.Code Crim. P. art. 215.1(A), in pertinent part, provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an | ^offense and may demand of him his name, address, and an explanation of his actions.
La.Code Crim. P. art. 213, in pertinent part, provides:
A peace officer may, without a warrant, arrest a person when:
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;
[[Image here]]
Trooper Accord, the law enforcement officer who arrested the defendant for DWI, testified at the hearing on the instant motions. On January 18, 1995, at approximate *235 ly 11:20 p.m., Trooper Accord was dispatched to investigate an accident scene on La. Hwy. 42 in Ascension Parish. The officer first encountered the defendant approximately two-tenths of a mile from the accident scene where a vehicle was in a ditch. At that time, the officer drove by the defendant, who was walking on La. Hwy. 42. However, before the officer arrived at the accident scene, he learned by radio that the suspected driver of the vehicle had been seen leaving the accident scene and walking west on La. Hwy. 42. The officer immediately turned his vehicle around and drove back to where he had seen the defendant. Although the defendant was no longer in the area where the officer had initially seen him, Trooper Accord saw the defendant a little further down La. Hwy. 42 near a ditch. The defendant responded to seeing the officer’s vehicle by running, jumping over the ditch, and falling down. The officer exited his vehicle and ordered the defendant to come back to him. The defendant did not respond, and the officer repeated his order. The defendant walked, stumbling and swaying, towards the officer. Trooper Accord advised the defendant of his Miranda rights and attempted to question him. The defendant was initially unable to answer any questions and had trouble standing up. He was incoherent, and the officer detected a strong smell of alcohol around him. Upon further questioning, the defendant admitted that he had been involved in the accident and had been driving the vehicle involved. During the officer’s questioning of the defendant, the defendant swayed back and forth and slurred his speech. The defendant was unable to perform any of the field sobriety tests that the officer requested of him. The officer arrested the defendant for DWI. The defendant was the only person that the officer saw in the area of the accident on the night in question and a check of the vehicle’s license plate revealed that it was owned by the defendant’s wife. (Trooper Accord did not specify when he performed this check).
UThe defendant did not testify at the hearing on the instant motions, and presented no evidence to challenge Trooper Accord’s version of the events of the night in question.
The defendant’s challenge to the presence of probable cause for his arrest was properly denied. Under the particular facts of this case, when the arresting police officer initially stopped defendant and attempted to question him in a public place he reasonably suspected that the defendant had committed an offense. Trooper Accord’s observation of the defendant’s actions and demeanor created reasonable cause to believe that the defendant was drunk and had been driving. This reasonable suspicion ripened into probable cause to arrest the defendant for DWI when Trooper Accord began communicating with the defendant and tried to administer field sobriety tests to him.
This assignment of error is without merit.

MOTION TO QUASH

In assignment of error number 2, the defendant contends that the district court erred in failing to grant his June 7, 1995 motion to quash on the basis that the predicate offenses relied upon by the State were constitutionally defective. This assignment of error has merit.
The bill of information filed against the defendant charged that the instant offense was the defendant’s third offense driving while intoxicated (DWI). The two predicate offenses relied upon by the State were a November 22, 1991 Ascension Parish first offense DWI, with a February 25,1992 guilty plea (predicate # 1), and a September 21, 1993 Ascension Parish second offense DWI, with a January 25,1995 guilty plea (predicate # 2). The defendant filed a motion to quash the bill of information, alleging that the predicate offenses could not be used for enhancement because they failed to comply with the rules of State v. Strain, 585 So.2d 540 (La.1991), and State v. Longo, 560 So.2d 530 (La.App. 1st Cir.1990).
The trial court held a hearing on the defendant’s motion to quash. In regard to predicate # 1, the State relied upon S-l, in pertinent part, a February 25,1992 extract of minutes and a February 25, 1992 Boykin *236 form.[3] In regard to predicate # 2, the State relied upon S-2, in pertinent part, a January-25, 1995 Boykin form.[4] The defendant challenged the State’s proof of |spredicate # 1, pointing out that the February 25, 1992 extract of minutes merely stated, “Accused present in court, advised of rights, waived right to counsel,” in regard to waiver of rights, and that the same violated the rule of State v. Strain. The defendant challenged the State’s proof of predicate #2, arguing that a Boykin form could not be used to “shore up” defective minutes, citing State v. Longo. The defendant also called the Deputy Clerk of Court for Ascension Parish to the stand. The Deputy Clerk admitted that her office used a computer program to generate some pre-typed information on Boykin exam forms for offenses past a certain date, and that the January 25, 1995 Boykin form contained language generated in that manner. The Deputy Clerk could not remember whether or not she was present in court on January 25, 1995, but testified that the district court’s normal procedure when taking a guilty plea for misdemeanors was to check off the rights on the Boykin form, with the exception of the right to trial by jury, as it advised the defendant of them. The trial court denied the defendant’s motion to quash, and the defendant assigned error.
In State v. Strain, 585 So.2d 540 (La.1991), the Louisiana Supreme Court, addressing a challenge to the State’s use of a DWI guilty plea as a predicate, articulated the requirements for a valid waiver of the right to counsel, to-wit:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused’s age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.... there must be a sufficient inquiry (preferably by an interchange with the accused that elicits more than “yes” and “no” responses) to establish on the record a knowing and intelligent waiver under the overall circumstances.... Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case.
[[Image here]]
While an accused who desires to waive counsel at trial generally should be made aware of the difficulties he might encounter in defending himself during the trial, there is little need to inform him of the pitfalls of self-representation at trial when he intends to plead guilty. The principal function of a lawyer for an accused who desires to plead guilty is to assist him in deciding whether to go to trial, and the judge who accepts an uncounseled guilty plea must satisfy himself that the accused knows and understands that by his waiver of counsel he is giving up his right to this assistance. The critical issue on review of the waiver is whether the accused understood the waiver. What the accused understood is determined in terms of the entire record and not just by certain magic words used by the judge.
When an accused waives his right to counsel in pleading guilty to a misdemean- or, the trial judge should expressly advise him of his right to counsel and to appointed counsel if he is indigent. The judge should further determine on the record that the waiver is made knowingly and intelligently under the 1(¡circumstances. Factors bearing on the validity of this determination include the age, education, experience, background, competency and conduct of the accused, as well as the nature, complexity and seriousness of the charge. The nature of the self-representation to be undertaken is also significant, since a layman obviously can more easily understand from a brief explanation by the *237 judge the significance of a guilty plea than he can the significance of defending himself in a felony trial, with the latent dangers and pitfalls attendant thereto. Determining the defendant’s' understanding of his waiver of counsel in a guilty plea to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial. (Footnotes and citations omitted.)
State v. Strain, 585 So.2d 540, 542-44 (La.1991).
Ultimately, the Strain court found that the defendant had knowingly and intelligently waived his right to counsel prior to entering the guilty plea to the predicate and thus allowed the use of the same by the State. However, this determination was made on the basis of the State’s presentation of a transcript of the guilty plea to the predicate which revealed a colloquy between the trial court and the defendant, establishing the defendant’s general competency to waive his right to counsel.[5]
In the instant case, the State presented no transcript of the defendant’s guilty plea to either predicate # 1 or predicate # 2. Moreover, what the State did rely upon to prove predicate # 1 was insufficient to establish a valid waiver of counsel. The February 25, 1992 minutes relied upon by the State revealed no inquiry by the trial court concerning the defendant’s capacity to waive his right to counsel. While the February 25, 1992 Boykin twaiver of rights form did detail the rights that the defendant was waiving, including the right to representation by an attorney and the right to representation by a court-appointed attorney if indigent, the Louisiana Supreme Court has held that a defendant’s signature on a printed waiver form advising him of his right to counsel and the signature of the trial judge on the same form that he is satisfied the defendant understood the nature of his plea and its consequences, do not discharge the duty of the trial judge to advise the defendant expressly of his right to counsel and to determine “ ‘on the record that the waiver is made knowingly and intelligently under the circumstances,’ taking into account such factors as the defendant’s age, background, and education.” State v. Deroche, 96-1376, p. 1 (La.11/8/96); 682 So.2d 1251, 1252. Accordingly, predicate # 1 was insufficient to serve as a predicate for enhancement of subsequent DWI offenses.
|7In regard to the State’s proof of predicate #2, the only proof of waiver of rights in the record is a January 25, 1995 Boykin form.[6] This proof was insufficient to show a knowing and voluntary waiver of Boykin rights.
In order for a misdemeanor guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. The judge must also ascertain that the defendant understands what the plea connotes and its consequences. It is the State’s burden to show that the defendant knowingly and expressly waived his Boykin rights when entering his guilty plea. To meet this requirement, the State may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry. However, a guilty plea-rights waiver form, even if well-executed and complete in every detail, without minutes or a transcript of the plea is not sufficient to show a knowing and voluntary waiver of Boykin rights. State v. Delanoix, 637 So.2d 515, 516 (La.App. 1st Cir. 1993). Accordingly, predicate # 2 was insufficient to serve as a predicate for enhancement of subsequent DWI offenses.
For the foregoing reasons, the defendant’s guilty plea and sentence are vacated. This case is remanded to the trial court for fur *238 ther proceedings in accordance with the views expressed herein. Since the guilty plea and sentence are vacated, the State is not precluded from introducing further evidence at a new hearing on the motion to quash which might cure the defects noted herein. Longo, 560 So.2d at 533-34.
GUILTY PLEA AND SENTENCE VACATED; REMANDED FOR FURTHER PROCEEDINGS.

. The latter motion was filed separately from, but at the same time as, the former motion. The motions were tried at the same hearing.

. Although the February 25, 1992 minutes are an "extract” of minutes, they are not the non-contemporaneous, pre-typed, pre-printed, pre-fabri-cated, fill-in-the-blank type of extract disapproved of by this court in State v. Longo, 560 So.2d 530, 533 (La.App. 1st Cir.1990).

. At the hearing, the State indicated that it was also relying upon the January 25, 1995 extract of minutes contained in S-2 in regard to predicate # 2. However, S-2, in the record before this Court, does not contain the referenced extract of minutes.

. The transcript in Strain was also a contemporaneous record of the guilty plea proceeding and indicated full advice of the Boykin rights and the defendant’s waiver thereof. See Strain, 585 So.2d at 541.

. See footnote 2, supra.